Thank you, your honor. May it please the court. I'm Carl Isles Cheryl, and I represent Jamar Alston. This case is a single issue case. It is regarding the application of the attempted murder enhancement under guideline 2K2.1C, 2X1.1A, and 2A2.1A1. Mr. Alston pled guilty to an information for possession of ammunition by a felon. The standard of review here is clear error as to factual findings, and that's the only question in the matter. The facts arose in this case as of January 1st, 2019, at the Elks Lodge in Sanford, North Carolina. It was a New Year's Eve party. Mr. Alston was attending, and there were many people there. It was very crowded. There was dancing. There was a bar area, and there were video cameras. Stationed throughout the Elks Lodge, and there was also security on hand. Mr. Alston was there with a friend. There's video of him just talking to this friend, and early in the morning, Mr. Alston approaches a Mr. Roscoe, and some words are exchanged between them, and he punches Mr. Roscoe. Then a to-do occurs. There is a scuffle, and it goes away from where the camera is, so that on the video it cannot be seen. And another camera is a camera of the entranceway. The entranceway has a security guard there, and he perks up as if he has suddenly heard the scuffle going on, and he goes away from where the camera is to where the scuffle is ensuing. The security guard returns to the view of that camera, accompanying Mr. Roscoe, having Mr. Roscoe in custody, taking him toward the door. Now, this is ironic, because one would think that the security guard would be grabbing the aggressor as the first one to grab and taking him away from the to-do that's going on. The security guard takes Mr. Roscoe to where the front door is. As the front door... Who is the aggressor? Only that he grabbed Mr. Roscoe. That's the only reason in the record. You're saying that we should assume... I'm not sure exactly what you're saying, but I guess I'm not clear why we should assume the security guard knew which one was the aggressor, as opposed to sort of knowing there were two parties involved in a fracas and removed one of them. Well, that's entirely possible. I'm just saying that it would appear logically that he would grab the aggressor. There's no substantiation of that. I'm just saying common sense. Mr. Sherrill, so as you've now described the facts, you have this altercation at the bar, a punch thrown by Mr. Alston. Security guard now steps in to separate the two and begins to escort Mr. Roscoe out the door. And so one of the issues in this case is the question of premeditation, right? And so as I understand the record in this case and the district court's finding, he seemed to conclude that given the fact that the parties at that point had been separated, that Mr. Alston then had sufficient time to premeditate, at least think about what he was going to do next. And of course premeditation doesn't take, there's no set fixed amount of time. It can happen in an instant. It can be an extended period of time. So why don't, why aren't we entitled to credit that view of the evidence that having separated these two, Mr. Alston then goes after, as I think you're about to describe, goes after Mr. Roscoe and then fires the shots, which luckily don't hit anybody. But why isn't that view of the record evidence sufficient to support the judge's findings, both as to malice of forethought and the separate requirement of premeditation? My argument is that there's no intention to commit murder. Basically that Mr. Alston did not shoot at Mr. Roscoe. Who was he shooting at? Well, the floor, who knows? It was just, I mean, as the security guard and Mr. Roscoe are approaching the door, Mr. Alston brushes by them, comes within two, three feet, I mean point blank range, and does shoot, which is, of course, there's no, there's no audio to go with the tapes, but you can see the shell casings falling to the ground. So he does shoot. There is no way he could be that close and miss somebody he was trying to kill. That is my argument. I mean, this is an argument that as you frame it, this is an argument we often see in white collar cases, right? But I didn't cook the books. I'm just totally incompetent, right? So I didn't intend to commit fraud. I just am absolutely incompetent. And that's sort of like, in essence, what you're saying here is that, like, he couldn't have been so incompetent to miss him, so he must have had no intention to do so. That's basically it. There's no way he could have intended to shoot Mr. Roscoe to be that close and miss him. Is there any evidence in the record of his background or training with firearms? No. What about the district court separate finding, as I understand it, that part of the reason, I suppose, why he missed was that his arm was bent around the security guard in trying to fire at Roscoe, and that led to the, in this case, happy ending of no one being killed. You really could not see in the video where the arm was. You could not see any fire coming out of the pistol or anything. He was wearing a dart. The shell casings on the floor. I mean, you know, you see no shell casings, then you see shell casings. We can assume in between those two points in time, he fired, and it looked to me like his arms around the security guard, but help me understand why you think that's not true? You can't really see in the video. I think it's speculation that his arm was around the security guard. I mean, Mr. Roscoe was being held by the security guard at the time, and I think the position of the arm was entirely questionable. Just as an aside, they don't pay that security guard enough because I don't, I mean, he was, you know, that guy, Mr. Roscoe probably has him to thank for his life, but in any event, that's neither here nor there. The shots, I think, were fired basically in order to intimidate. I don't think they were fired in an effort to commit a homicide, and we would urge the court to look at the facts and the lack of the facts, that there was an effort here to try to commit a murder. Okay. If we don't have anything more, we'll let the other side talk, and then we can go back to rebuttal. As my colleagues have questions. Okay. Thank you. Thank you, and good morning. May it please the court, Tanner Kroger for the United States. Your honors, the district court's factual finding that the defendant committed attempted first degree murder was not clearly erroneous. And as we discussed here this morning, the evidence in sentencing was principally this high quality surveillance video that was taken at the Elks Lodge in Sanford, North Carolina during a New Year's Eve celebration at the end of 2017. And the video showed, the various angles showed, that the defendant shot three times at Joseph Roscoe, who was the would-be victim in this case, and in the entryway of that very crowded nightclub. And at sentencing, the district court's task was to determine whether those three shots constituted an attempted first degree murder under the sentencing guidelines. Principally, as the district court explained, reading from this court's unpublished opinion in chambers, there were two findings that the district court had to make. First, that there was malice of forethought, and second, that there was premeditation in the act. The district court made each of those findings, and the record at sentencing supported that analysis. As I think the panel has indicated, the big question here is premeditation. But to address briefly the malice piece, the district court explained that malice is reckless and wanton conduct, a gross deviation from a reasonable standard of care that poses a serious risk of injury or death. That occurred here. The defendant fired three shots at an individual, while another individual, the security guard that we've mentioned, was trying to break up the fight. And so there was reckless and wanton behavior as to the would-be victim, Mr. Roscoe. There was malice of forethought as to the security guard. And frankly, as some of the cases I think we cited in our brief indicate, there's malice shooting into a crowded area like a bar. So the district court's finding that there was malice I think is on very strong footing, and I would urge the court not to vacate the sentence based on the malice issue. Admittedly, the premeditation piece is a heavier lift for the United States. And here the district court was careful to walk through its factual findings as to why there was premeditation in this case. District court started that analysis with observing and looking at the surveillance video in the main dance hall where Mr. Alston, the defendant, was speaking with an individual named Jason Arnold. District court found that there was collaboration between the two, and he based that I think principally on the fact of the conversation and also the conduct that the district court observed in the moments after these two met in the main dance hall of this club and spoke for about a minute. After that, the two went their separate ways, but into the bar area where this fight would start. And there's a couple of findings that the district court made that are important to the intent piece. The first is that Mr. Arnold, who I'll make call the lookout, he positioned himself in the doorway that separated the bar area from the entryway to the club. And as the district court explicitly said, he was there for a reason. What happened next was the defendant, Mr. Alston, followed in. The victim was by then sitting at the bar. And there are two critical facts the district court found that are very important to the premeditation piece that come from this sequence. First, as Mr. Alston, the defendant, was walking toward Mr. Roscoe, the victim, Mr. Alston looked at the lookout, Mr. Arnold, who was in the doorway separating the bar from the entryway. The second is that the defendant grasped the outside of his jacket, where moments later he would pull a gun. And those two facts are important because they connect the defendant's mental state to the conversation that happened in the dance hall to the altercation that was about to happen. And it connects the defendant's mental state to the firearm before the fight ever breaks out, before there would otherwise be maybe a heat of passion or some other reason to pull a gun. The defendant makes sure that that firearm is in his pocket before he engages the victim. And the district court found that. The district court made that finding. As your honors know from reviewing the video, what happens next is the defendant had a couple of words with the victim. The defendant punched this victim in the face. There's a brief tussle between the two. And immediately after that tussle is broken up, the defendant pulled a firearm out of his— Mr. Over, can I stop you there? So if Mr. Alston had fired the shots right then and there before the altercation with Mr. Roskow, the fight, are you saying that the district court's findings up to that point would have been sufficient on premeditation? Yes, your honor. I think there would have been. I think there would have been a showing that there was some discussion, some plan, as the district court found. The defendant walked right up to, as I understand, your honors, hypothetical, would have walked up to the victim and without an altercation would have shot him. I think that would have clearly showed premeditation and an intense kill. Here, there was the tussle. There was the fight that the defendant started. And within seconds, this is a matter of about 12 to 15 seconds from when the defendant first engages the victim to when the shots are fired, the defendant starts the fight. The defendant throws the first punch and, again, immediately pulls that firearm that only seconds earlier he made sure was in his pocket. And the district court made that fight. What happens next is they move—the altercation moves into the entryway of this bar where this security guard, the district court found was a large man, tried to intervene. And I think I agree with Mr. Sherrill's assessment that the security guard is really trying to separate a fight, what he thinks is a fight at that point. I don't know that it's relevant what the security guard thought about who the initial aggressor was or what the security guard's mental state was. What's relevant and what the district court found was that the defendant bent his arm around that large security guard in order to shoot the would-be victim in this case, Mr. Roscoe. I don't know why he missed. I'll say he missed by the grace of God. And I think we're all glad that nobody died in this situation. It's not—people miss in these types of situations routinely. I think we hear—this is outside of the record, but we certainly hear about police officers, for example, missing in high-stress situations. There was alcohol involved, which is shown earlier in the surveillance video. I'm not sure why he missed, but the district court found that he fired the shots at Mr. Roscoe, that he bent his arm around the security guard. And that is—there's no other reason to fire three shots at somebody at close range other than an intent to kill. The standard here is clear air. And so the district court studied this surveillance video carefully. District court watched portions of it multiple times. District court studied the still shots of the surveillance video that the government provided at sentencing. And based on that review and based on that analysis, the district court found by a preponderance of the evidence that there was both malice and premeditation in an attempt to kill Mr. Roscoe. It's a highly deferential standard. And this court should only vacate the sentence if it has a firm, definite conviction that the district court got it wrong. And I would urge this court not to have such a definite and firm conviction. Because while reasonable minds might disagree on the premeditation piece, that, as this court knows, is not whether this court might have decided the facts differently. It's whether it's a reasonable position or permissible position of the district court, those findings. And here it is absolutely permissible that somebody who makes sure that they have a gun prior to starting a fight with somebody and only seconds later pulls that gun out, fires not one, not two, but three shots at a very close range of somebody intended, premeditated the killing of that individual. So I would ask the court to affirm the sentence below. Thank you. Thank you. Sir, do you have any rebuttal? Mr. Carroll? Yes. The only thing I would say is the question is whether the firing of the gun was at Mr. Roscoe. And we would say there's not sufficient evidence that it was at Mr. Roscoe. It was just too close to have missed. And we'd ask the court to find that the application of the attempted murder enhancement was clearly erroneous. Thank you very much.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson